*reviewed and approved as to form only / Issue no bail warrant* — KAE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

**FILED**

NOV 1 3 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES OF AMERICA

v.

RAYMOND RIOS

## CRIMINAL COMPLAINT

CASE NUMBER: 1:08 MJ 00271 GSA

(If search warrant is issued regarding this complaint, **indicate above** the case number assigned.)

I, <u>Thinh Nguyen</u>, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Beginning at a time unknown, but no later than August 7, 2007, and continuing to on or about October 24, 2008, in Fresno and Kern Counties, in the <u>Eastern</u> District of <u>California, and elsewhere</u>,

> The defendant knowingly conspired to distribute and to possess with intent to distribute methamphetamine, cocaine base, MDMA (ecstasy), and marijuana,

in violation of Title <u>21</u>, United States Code, Section(s) <u>841(a)(1) and 846</u>, with a minimum penalty of ten years, a maximum penalty of life imprisonment, <u>$4,000,000</u> dollar fine, and $100 penalty assessment.

I further state that I am a <u>Special Agent with the FBI</u> and that this complaint is based on the following facts:      *(Official Title)*

See Attachment A.

Continued on the attached sheet and made a part hereof:   X   Yes   ___ No

Signature of Complainant
**Thinh Nguyen, Special Agent**

Sworn to before me and subscribed in my presence,

November 12, 2008          at     Fresno, California
*(Date)*                            *(City and State)*

Honorable ~~Sandra M. Snyder~~ GARY S. Austin
**U.S. Magistrate Judge**                (Signature of Judicial Officer)
*(Name & Title of Judicial Officer)*

# ATTACHMENT "A"

# AFFIDAVIT

I, Thinh Nguyen, Special Agent, Federal Bureau of Investigation (FBI); and Task Force Agent, Fresno Methamphetamine Task Force (FMTF) being duly sworn, state:

## EXPERTISE

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since October, 1999. I am currently assigned to the position of Task Force Agent (TFA) with the Fresno Methamphetamine Task Force (FMTF), located at the California Department of Justice, Bureau of Narcotic Enforcement, Fresno Regional Office. While employed as an FBI Special Agent, I have been involved in many types of investigations, including bank robbery, kidnaping, narcotics, and fugitive investigations.

2. The inception of my law enforcement training was my attendance at the FBI Academy where I received formal investigative training to include subject matters related to controlled substance investigations, including: cocaine, cocaine base, methamphetamine, heroin, marijuana, and hallucinogens. In 2005, I received eighty (80) hours of formal training at the Basic Narcotic Investigation School, administered by the California Department of Justice, Bureau of Narcotic Enforcement (BNE). I have attended other types of training and conferences, related to the various aspects of narcotic investigations. My present assignment consists of investigating narcotic offenses, including the sales, transportation, and manufacturing of narcotics. These investigations specifically include, but are

not limited to, investigations of subjects and/or criminal organizations involved in the manufacturing, transportation, and/or distribution of methamphetamine; chemicals and/or equipment utilized in the manufacturing of methamphetamine; and the gamut of other narcotic offenses. I am familiar with, and have participated in, all of the conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, general questioning of witnesses, search warrants, confidential informants, pen registers, trap and trace, and the use of undercover agents.

3. I have worked and conferred with various experienced law enforcement officers who were trained in narcotic investigations, and I have drawn from their knowledge and expertise in the field of narcotic enforcement. I have spoken with and arrested various suspects engaged in the distribution of controlled substances.

4. As a result of my participation in this investigation, and through review and analysis of information received from former Task Force Agent Mark Rodriques,[1] I am familiar with all aspects of this investigation. I have not included each and every fact known to me and derived therefrom, but I have not purposely omitted any fact(s) that undermine or are contrary to the opinions and conclusions set forth herein. I have detailed only the facts that I believe are necessary and appropriate to establish the probable cause mandatory for an authorization of the arrest of the subject identified hereinafter. On the basis

---

[1] Agent Rodriques is currently assigned to the California Bureau of Narcotic Enforcement and is referred to herein as BNE Special Agent (SA) Rodriques, notwithstanding the fact that he was not at all times during this investigation so assigned.

2

of this familiarity and other information which I have reviewed and determined to be reliable, I allege the following:

### STATEMENT OF PROBABLE CAUSE

5. On August 7, 2007, SA Rodriques was contacted by a Confidential Informant (CI) who advised TFA Rodriques that the CI was in contact with an unknown Hispanic male who the CI knew as "MEME." The CI advised TFA Rodriques that MEME, later positively identified as JOSE MANUEL CISNEROS, born on May 8, 1978, was actively selling large quantities of methamphetamine. The CI stated that he/she was in the process of negotiating the purchase of a quarter to a half pound of methamphetamine from CISNEROS at the request of SA Rodriques. CISNEROS had advised the CI that he had an associate in Fresno, California, who was in possession of a large amount of methamphetamine.

6. On August 7, 2007, at approximately 10:15 a.m., at the direction of SA Rodriques, the CI drove to the Travelodge Knights Inn Motel, located in Fresno, California, where the CI met with CISNEROS to negotiate the purchase of methamphetamine. CISNEROS was then residing in Room 301 at the Travelodge Knights Inn. The CI and CISNEROS agreed to the purchase of an eighth of an ounce of methamphetamine for approximately $200.

7. On August 7, 2007, at approximately 10:45 a.m., SA Rodriques met the CI in the east parking lot of the FMTF office and conducted a search of the CI person and vehicle for any narcotics or weapons. The search met with negative results for any narcotics or weapons. The CI was provided with $200 in prerecorded funds for the purchase of the methamphetamine.

8. On August 7, 2007, the CI and CISNEROS met with an

3

1  unknown Hispanic male who took them to an apartment, located at
2  253 North Diana, Apartment D, Fresno, California. While at the
3  apartment, the CI and the unidentified Hispanic male was greeted
4  at the door by an unknown Hispanic female. The CI gave the
5  unidentified Hispanic male the $200 at which time the
6  unidentified Hispanic male exchanged the $200 with the
7  unidentified Hispanic female for a small plastic bindle
8  containing a crystalline substance which later tested positive
9  for the presence of amphetamine. The unknown Hispanic male gave
10 the CI the plastic bindle containing the white crystalline
11 substance. The CI subsequently left the area and met with SA
12 Rodriques. The CI advised SA Rodriques that he had "scored," and
13 provided SA Rodriques with the small plastic bindle containing
14 the white crystalline substance.
15      9.   On August 16, 2007, SA Rodriques was contacted by the
16 CI who advised that he/she had been contacted by "VAGO," the
17 unidentified Hispanic male from whom the CI had purchased
18 methamphetamine on August 7, 2007, as detailed above. VAGO
19 advised the CI that his source of supply would be home early and
20 could supply the CI with any amount of methamphetamine. At the
21 direction of SA Rodriques, the CI negotiated the purchase of one
22 quarter of an ounce of methamphetamine.
23      10.  On August 16, 2007, at approximately 4:20 p.m., SA
24 Rodriques, along with other surveillance agents, observed the CI
25 meet with VAGO. The CI advised that VAGO had contacted his
26 source of supply, later positively identified as RAYMOND RIOS by
27 the CI, and that RIOS had advised VAGO that he would meet with
28 VAGO and the CI in approximately twenty minutes.

1    11.  Surveillance units eventually observed the CI and VAGO walk to RIOS' residence located at 253 North Diana, Apartment D, Fresno, California.  The CI and VAGO were greeted by RIOS at the door at which time, surveillance agents observed the CI and VAGO enter RIOS' apartment.  Shortly thereafter, the CI and VAGO were observed by surveillance units leaving RIOS' apartment with the eventual departure of the CI from the area.  The CI met with SA Rodriques and he/she gave SA Rodriques two clear plastic baggies containing a white crystalline substance which tested positive for the presence of amphetamine.

12.  During the debrief of the CI, the CI advised SA Rodriques that RIOS invited the CI and VAGO into his apartment.  Upon entering RIOS' apartment, the CI handed RIOS $400, at which time, RIOS led the CI into the kitchen area where RIOS retrieved a scale and some white crystalline substance.  The CI observed RIOS weigh out the two individual plastic baggies containing the white crystalline substance.  RIOS informed the CI that he had given the CI a little more than a quarter of an ounce.  During the debrief, the CI was shown a photograph of RAYMOND RIOS which the CI positively identified as the individual who sold him the methamphetamine.

13.  On December 17, 2007, the CI negotiated the purchase of approximately two ounces of rock cocaine from RIOS.  RIOS had informed the CI on a previous date that his methamphetamine supplier was out of supply; however, RIOS' had rock cocaine for sale.  At approximately 2:55 p.m., surveillance agents observed the CI meet with RIOS at RIOS' apartment to conduct the controlled purchase of two ounces of rock cocaine.  Surveillance

1  agents observed the CI enter RIOS' apartment and, a short time
2  later, surveillance agents observed the CI leave RIOS' apartment.
3  After leaving RIOS' apartment, the CI met with SA Rodriques, as
4  instructed, and gave SA Rodriques two plastic baggies containing
5  an off-white crystalline substance which tested positive for
6  cocaine.

7      14.  On January 17, 2008, SA Rodriques was contacted by the
8  CI who advised SA Rodriques that he/she had been in contact with
9  RIOS regarding the purchase of rock cocaine.  Upon receiving the
10 information, SA Rodriques met with the CI and instructed the CI
11 to contact RIOS again and negotiate the purchase of one ounce of
12 rock cocaine.  The CI contacted RIOS as instructed and negotiated
13 the purchase of one ounce of rock cocaine.

14     15.  On January 17, 2008, surveillance agents observed the
15 CI meeting with RIOS for the controlled purchase of one ounce of
16 rock cocaine.  The CI purchased one ounce of rock cocaine from
17 RIOS for $750.  After the purchase from RIOS, the CI met with SA
18 Rodriques and gave SA Rodriques a plastic baggie containing a
19 white rock like substance which tested positive for cocaine.

20     16.  On October 24, 2008, the CI negotiated the purchase of
21 approximately 1,000 ecstasy pills and some high quality marijuana
22 from RIOS as part of a planned buy/bust operation.  RIOS and the
23 CI agreed to meet in Bakersfield, California, where they would
24 conduct the exchange.  At approximately 10:48 a.m., RIOS met with
25 the CI in Bakersfield, California.  The CI entered RIOS' vehicle
26 at which time RIOS handed the CI a plastic bag containing a large
27 amount of multi-colored pills and a clear plastic bag containing
28 a green leafy substance.  Upon confirmation of the sales of the

ecstasy pills and marijuana from RIOS, RIOS was immediately taken into custody at the scene.

17. During the subsequent Mirandized interview of RIOS, RIOS admitted to the sales of the ecstasy pills and marijuana to the CI. RIOS also admitted to selling rock cocaine; however, RIOS advised SA Rodriques that he had stopped selling rock cocaine, because the clientele that purchase rock cocaine were unsavory.

## CONCLUSION

18. Based on my training and experience and the information contained within this Affidavit, I believe probable cause exists to establish that RAYMOND RIOS was involved in the conspiracy to distribute and/or to possess with intent to distribute methamphetamine, rock cocaine, ecstasy, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.

_____
Thinh Nguyen, Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 12 DAY OF NOVEMBER, 2008.

_____
~~SANDRA M. SNYDER~~ GARY S. Austin
UNITED STATES MAGISTRATE JUDGE,
EASTERN DISTRICT OF CALIFORNIA